## SCOTT v. WOOD NEWSPAPER MACHINERY CORPORATION.

District Court. D. N. J.
Feb. 4, 1938.

Walter L. Hetfield, Jr., of Plainfield, N. J. (John C. Kerr, of Englewood, N. J., and Allan C. Bakewell, of New York City, of counsel), for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and Morris D. Jackson, both of New York City, of counsel), for defendant.

CLARK, District Judge.

In the minds of those who practice its mysteries, the United States patent system is credited with the major part of our mechanical civilization. Without examining this thesis, one might observe that there are those who have been unkind enough to suggest that credit is in all respects not quite the appropriate word. However that may be, we can agree that the art of the patent in suit presents the one phase of that mechanical civilization with which we cannot quarrel. That art is the art of the distribution of information and more particularly the distribution of information by means of newspapers.

We imagine that nearly every one at one time or another has visited a newspaper plant. Our own first visit to the Newark Evening News took place at the age of ten. Our second, the other day and in connection with the litigation "started" by this opinion. We experienced again the feeling of awe at the instantaneous transformation of events into narratives at 3 cents per.

As the etymology indicates (venire) that transformation is either instantaneous or it is futile. By the same token, speed of production becomes not only a factor in meeting a demand for the product but a factor in the value of the product itself. As newspapers are produced by running webs of newsprint through printing presses, the speed at which those presses can be run governs the speed of production. Conditions of transportation govern the form in which newsprint can be fed to the presses. The individual rolls required by those conditions are quickly exhausted by the rapidly running press. The method of replacing an exhausted (expiring) roll by a fresh (replenishing) roll becomes then the key to the speed of the press and any improvement in that method correspondingly important.

Originally, because the roll holding rack was stationary, the presses had to be stopped entirely while the new roll was put in and pasted to the old one. Then came the first and great improvement embodied in the patent to Stone and Kohler, his assignee, Patent No. 1,124,673. Cline Electric Mfg. Co. et al. v. Kohler, 7 Cir., 27 F.2d 638. There had been patents and machines constructed thereunder which showed rolls mounted on rotatable reels (racks) and fed into printing presses by means of the rotation of the reels. Stone combined these reels with a belt which exerted pressure on the glue covered replenishing roll and thus made a paste. The Patent Office gave the Stone patent fifteen years consideration before issuing it. The Circuit Court of Appeals for the Seventh Circuit approved it after eleven months study on a theory of an inventive combination of reel and belt. The reel of this inventor held both rolls and was not stationary but rotating. Its rotation brought the replenishing roll into contact (feeding position) with the running roll and enabled the paste to be made automatically while the press was still running.

The Stone machine came to be known as the "Flying Paster." The adjective was, however, more flattering than accurate. The inherent tendency of newsprint to tear placed strain limitations on the speed at which the "thread" (paste) could be accomplished. The drag of the immobile (inert) roll would tear a web running at anything like press speed. The problem, therefore, became one of overcoming that immobility (or inertia) of the replenishing roll. Its solution led to the second improvement and the patent in suit.

The operators of the "Flying Pasters" had been in the habit of "boosting" or rotating the replenishing roll by hand. As in

many other arts, the step from manual to mechanical was quickly taken and is embodied in the machine of the Stilwell patent No. 912,330. There the immobility (inertia) of the replenishing roll was overcome by its rotation at press speed. The practical trouble with that machine lies in the means used to bring about that rotation, namely, a surface belt. The experts for both sides agree that it failed because the belt wrinkled the paper, loosened its lint, and narrowed its possible pasting area.

The defendant attacks the validity of the Scott patent by offering two types of anticipation, first, a particular paper patent to Pfister in this particular art, and second, several operatable patents from the allegedly analogous art of winding paper generally. As the question of infringement admits, in our view, of no doubt, we are not going to express an opinion on what to us is the more difficult matter of validity. In case another court should find our certainty their uncertainty and vice versa, it may not be out of order to write a few words on each phase of the defendant's attack on the patent.

We were not impressed by the paper patent to Pfister, patent No. 1,250,217. The court has enlivened many a dull moment in its chambers (if there can be any such) by the operation of the working model of the Pfister roll changer furnished to it by defendant's counsel and correctly described by his opponent as seductive. We are satisfied that the latter's criticism of this model is justified and a fortiori that Pfister the patent, as distinguished from Pfister the model, does not anticipate Scott. Pfister does show a core drive and to that extent is an advance over Stilwell and by the same token a reason for limiting the scope of Scott. The difficulty with Pfister is that the revolution of the replenishing roll depends upon the rotation of the roll through friction. The practical impossibility of any rotation sufficient to so revolve the roll at anything like press speed makes the boost of the core drive abortive and leaves the art in the stage of Stone—a paste at threading speed. The best proof that this is a fair objection to Pfister lies in defendant's attempt in the aforesaid seductive model to improve upon the structure of the paper patents by elimination of this defect. The particular form of this cure is the connection of the pulling device used to simulate the pull of the press to the roll and thus in effect using the speed of the press to supply the missing speed of the replenishing roll.

The attention both sides devoted to the Cornwell patent No. 444,818, the Moore patent No. 653,583, the Smith patent No. 1,194,248, and the Okuura patent No. 1,750,487 stamps them as the closest in any other art. These patents do show core driven rolls of paper. They do show rotatable racks holding those core driven rolls. And, finally, they show that these rolls so held and so driven are used for winding paper. But these patented machines are not for use in the printing of newspapers. For that reason, they do not require any "pasting" of one roll to another. In fact, as they seem to be for the purpose of winding paper from a large roll onto smaller rolls, severing rather than joining seems to be indicated. In that posture, a court adjudicating validity must determine the quality (genius or mechanical) of importing a core driven roll from one kind of machine on which paper is wound for one purpose to another kind of machine on which paper is wound for a different purpose. The difference in both machine and purpose resulting, of course, in different functions.

Infringement here, as inevitably in so many patent cases, depends upon the scope of the complaining patent. Stone was the first to add a belt and paste to the rotatable reels of the old art. Stilwell was the first to realize the advantages of a mechanical rather than of a manual boost. Scott remedied the practical defects of the particular form (surface drive) of that mechanical operation. In doing so, he had to go outside the art which concerned itself with newsprint. If that excursion was ingenious, a question we are refusing to pass upon, it does not, we think, entitle him to levy tribute upon all other such excursions. Yet that would be exactly the effect of a decree for the present plaintiff. Mr. Justice Bradley, that very great patent judge, has prescribed the rule in what seems to us unanswerable language:

"In such cases, if one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute. But if the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces, and every other inventor is entitled

to his own specific form, so long as it differs from those of his competitors, and does not include theirs. These general principles are so obvious, that they need no argument or illustration to support them. We think they are specially applicable to the case before us." Chicago & N. W. Railway Co. v. Sayles, 97 U.S. 554, at pages 556, 557, 24 L.Ed. 1053.

We cannot accede to the plaintiff's tortured construction of the significant phrase in both the specifications and claims of the Scott patent. The words used to refer to the application of the core drive are "substantially at the time of uniting the active and replenishing webs." One need hardly go beyond the two words themselves. The interpretation of a word importing some slight degree of latitude cannot be used to transform the preposition "at" into any of the opposites in its trilogy. We may say that counsel's current etymological interpretation of the phrase is contradicted by his client's past mechanical interpretation. The patent gives considerable attention to the use of a torque motor as an "actuating means" for the core drive. As that type of motor is started by the pull of the web, very little is left of any theory but that of a prior contact of two rolls.

So we proceed to the consideration of infringement upon the assumption that the driving force or "boost" of the Scott patent is applied to the replenishing roll "at the earliest" when it touches the active web even before it reaches the pasted area. The defendant on the other hand and by concession brings his replenishing roll to full press speed and thereafter and not until then makes the contact (according to the judgment of the operator). Plainly these operations are different. Has their difference legal significance? We think it has.

As we see it, both inventions are successive steps away from the earlier threading speed and toward the current operation. The problem is the strain on the web. A boost at contact lessens this strain in some degree. Press speed at contact abolishes it. The paste being made at the outermost or peripheral rim of the roll, speed in core driven rolls varies with the diameter of the roll. Therefore, rotation without a calibrating mechanism results in approximate press speed. The strain on the web remains in proportion to the closeness of the approximation. So the modern machine used the defendant's method of full speed rotation before contact together with his calibrating mechanism (New York Times' presses).

We agree that the addition of this last element does not avoid infringement. We think, however, that Scott's improvement of a particular core drive does not blanket all core drives any more than Stilwell's mechanical surface drive anticipates all mechanical drives. Scott decreased the strain on the web although not enough apparently to justify practical operation. Wood's alleged infringing machine carried this decrease one step further. It did not disappear until the invention of his later machine combining the rotation of the replenishing roll at press speed before contact with a calibrating device. We hold with Mr. Justice Bradley that one degree cannot enjoin another and one step forward halt all progress.

The bill will be dismissed.

*The opinion of the Court in this case, as filed, contains a statement of essential facts and applicable rules of law indicating the grounds of the decision and it may stand in compliance with the provisions of Equity Rule 70½, 28 U.S.C.A. following section 723.*